REPÚBLICA DE COLOMBIA



MINISTERIO DE JUSTICIA Y DEL DERECHO

RESOLUCIÓN NÚMERO 424 DE

# 14 DIC 2017

Por la cual se decide sobre una solicitud de extradición

**EL PRESIDENTE DE LA REPÚBLICA DE COLOMBIA,**

en ejercicio de la facultad que le confiere el artículo 491 de la Ley 906 de 2004, y

**CONSIDERANDO:**

1.      Que mediante Nota Verbal No. 1835 del 25 de septiembre de 2015, el Gobierno de los Estados Unidos de América, a través de su Embajada en Colombia, solicitó la detención provisional con fines de extradición del ciudadano colombiano **DANIEL RENDÓN HERRERA**, requerido para comparecer a juicio por participar en una empresa criminal continuada y delitos de narcóticos.

2.      Que en atención a dicha solicitud, el Fiscal General de la Nación (e), mediante Resolución del 23 de octubre de 2015, decretó la captura con fines de extradición del ciudadano **DANIEL RENDÓN HERRERA**, identificado con la Cédula de Ciudadanía No. 8.011.256, quien fue notificado de dicha orden en el lugar de reclusión, el 20 de enero de 2016, por miembros de la Dirección de Investigación Criminal e Interpol de la Policía Nacional.

MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

18

---

**3.** Que mediante Nota Verbal No. 0412 del 8 de marzo de 2016, la Embajada de los Estados Unidos de América en nuestro país formalizó la solicitud de extradición del ciudadano **DANIEL RENDÓN HERRERA**.

La mencionada misión diplomática informó que esta solicitud de extradición para **DANIEL RENDÓN HERRERA** es adicional a la solicitud de extradición que realizó a través de la Nota Verbal N° 2396 del 13 de noviembre de 2013, por cargos imputados en la Corte Distrital de los Estados Unidos para el Distrito Sur de Nueva York, la cual fue aprobada parcialmente por el Gobierno Nacional y diferida la entrega del ciudadano requerido, a una fecha posterior.

Precisa que el ciudadano **DANIEL RENDÓN HERRERA** es ahora requerido en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York para comparecer a juicio por participar en una empresa criminal continuada y delitos de narcóticos.

En la Acusación Sustitutiva No. 14-0625 (S-3) (DLI), dictada el 12 de agosto de 2015, en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York, se le imputan los siguientes cargos:

*"CARGO UNO*
*(Empresa Ilícita Ininterrumpida)*

*(...)*
*9. Alrededor o entre junio de 2003 y diciembre de 2014, siendo ambas fechas aproximadas e inclusivas, y dentro de la jurisdicción extraterritorial de los Estados Unidos, los acusados (...) DANIEL RENDÓN HERRERA, también conocido como 'Don Mario', (...) en concierto con otros, estuvieron involucrados, con conocimiento e intención, en una empresa ilícita ininterrumpida, en la que los acusados (...) DANIEL RENDÓN HERRERA, (...) cometieron violaciones al Título 21, Código de los Estados Unidos, Secciones 846, 848(e), 952(a), 959(a), 960 y 963, incluyendo las Violaciones Uno a Treinta y Tres descritas a continuación, las cuales fueron parte de una serie continua de violaciones de dichas leyes llevadas a cabo por los acusados (...) DANIEL RENDÓN HERRERA, (...), en concierto con cinco o más personas respecto a las cuales los acusados (...) DANIEL RENDÓN HERRERA, (...) ocupaban un puesto de supervisión y administrativo, y que de dichas series continuas de violaciones los acusados (...) DANIEL RENDÓN HERRERA, (...) obtuvieron ingresos y recursos sustanciosos. La continua serie de violaciones, como se define en el Título 21, Código de los Estados Unidos, Sección 848(c) incluyen las Violaciones Uno a Treinta y Tres descritas a continuación:*

*Violación Uno*
*(Concierto para Producir y Distribuir Cocaína Internacionalmente)*

MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

Hoja No. 3 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

---

10. *Alrededor o entre junio de 2003 y diciembre de 2014, siendo ambas fechas aproximadas e inclusivas, y dentro de la jurisdicción extraterritorial de los Estados Unidos, los acusados (...) DANIEL RENDÓN HERRERA, también conocido como 'Don Mario', (...) en concierto con otros, conspiraron con conocimiento e intención, para producir y distribuir cinco kilogramos o más de una sustancia que contenía cocaína, una sustancia controlada de la 'Categoría II', con conocimiento e intención de que dicha sustancia sería importada ilegalmente a los Estados Unidos de un lugar fuera de este, en violación del Título 21, Código de los Estados Unidos, Secciones 959(a), 959(c), 960(a)(3), 960(b)(1)(B)(ii) y 963.*

### <u>Violaciones Dos a Treinta y Dos</u>
### *(Distribución Internacional de Cocaína)*

11. *Alrededor o entre las fechas indicadas a continuación, siendo todas las fechas aproximadas e inclusivas, y dentro de la jurisdicción extraterritorial de los Estados Unidos, los acusados (...) DANIEL RENDÓN HERRERA, también conocido como 'Don Mario', (...) en concierto con otros, distribuyeron con conocimiento e intención una sustancia controlada, y sabiendo y con intención de que dicha sustancia sería importada ilegalmente a los Estados Unidos de un lugar fuera de este, delitos que involucraron una sustancia que contenía cocaína, sustancia controlada de la 'Categoría II', cuyas cantidades se presentan a continuación, y en violación del Título 21, Código de los Estados Unidos, Secciones 959(a), 959(c), 960(a)(3) y 960(b)(1)(B)(ii), y Título 18, Código de los Estados Unidos, Sección 2:*

| VIOLACIÓN | CANTIDAD APROXIMADA | FECHA APROXIMADA |
|---|---|---|
| 2 | 1.600 kilogramos de cocaína | 18 de junio de 2003 |
| 3 | 2.040 kilogramos de cocaína | 3 de agosto de 2003 |
| 4 | 1.800 kilogramos de cocaína | 15 de agosto de 2003 |
| 5 | 1.650 kilogramos de cocaína | 28 de agosto de 2003 |
| 6 | 1.200 kilogramos de cocaína | 28 de septiembre de 2003 |
| 7 | 1.400 kilogramos de cocaína | 3 de septiembre de 2004 |
| 8 | 1.796 kilogramos de cocaína | 19 de septiembre de 2004 |
| 9 | 2.000 kilogramos de cocaína | 22 de octubre de 2004 |
| 10 | 1.670 kilogramos de cocaína | 16 de noviembre de 2004 |
| 11 | 1.868 kilogramos de cocaína | 19 de noviembre de 2004 |
| 12 | 2.090 kilogramos de cocaína | 25 de noviembre de 2004 |
| 13 | 2.060 kilogramos de cocaína | 27 de enero de 2005 |


MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO,
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

Hoja No. 4 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

| 14 | 1.811 kilogramos de cocaína | 2 de junio de 2005 |
| 15 | 2.000 kilogramos de cocaína | 26 de agosto de 2005 |
| 16 | 1.700 kilogramos de cocaína | 10 de enero de 2006 |
| 17 | 1.940 kilogramos de cocaína | 20 de mayo de 2006 |
| 18 | 2.100 kilogramos de cocaína | 10 de noviembre de 2006 |
| 19 | 1.870 kilogramos de cocaína | 3 de enero de 2007 |
| 20 | 2.100 kilogramos de cocaína | 19 de abril de 2007 |
| 21 | 2.000 kilogramos de cocaína | 25 de mayo de 2007 |
| 22 | 2.000 kilogramos de cocaína | 3 de julio de 2007 |
| 23 | 2.000 kilogramos de cocaína | 23 de julio de 2007 |
| 24 | 2.000 kilogramos de cocaína | 6 de noviembre de 2007 |
| 25 | 1.950 kilogramos de cocaína | 20 de noviembre de 2007 |
| 26 | 1.000 kilogramos de cocaína | Diciembre de 2009 |
| 27 | 12.000 kilogramos de cocaína | Enero de 2010 a enero de 2011 |
| 28 | 2.000 kilogramos de cocaína | Septiembre de 2011 |
| 29 | 2.500 kilogramos de cocaína | Octubre de 2011 |
| 30 | 2.000 kilogramos de cocaína | 10 de noviembre de 2011 |
| 31 | 7.000 kilogramos de cocaína | Febrero de 2012 |
| 32 | 2.500 kilogramos de cocaína | Marzo de 2012 |

### _Violación Treinta y Tres_
### Concierto de Homicidio (Traficantes de Drogas Rivales)

12. Alrededor o entre junio de 2003 y diciembre de 2014, siendo ambas fechas aproximadas e inclusivas, dentro de la jurisdicción extraterritorial de los Estados Unidos, los acusados (...) DANIEL RENDÓN HERRERA, también conocido como 'Don Mario', (...) en concierto con otros y mientras participaban en uno o más delitos castigables según la Sección 960(b)(1) del Título 21 del Código de los Estados Unidos, a saber: los delitos que se describen en las Violaciones Uno a Treinta y Dos, concertaron con conocimiento o intención para matar y causar la muerte intencional de una o más personas, a saber: líderes, integrantes y asociados



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO.
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

21

Hoja No. 5 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

---

*de organizaciones rivales de tráfico de drogas y dichas muertes resultaron en la violación del Título 21, Código de los Estados Unidos, Secciones 848(e)(1)(A) y 846.*

*(Título 21, Código de los Estados Unidos, Secciones 848(a) y 848(c); Título 18, Código de los Estados Unidos, Secciones 3238 y 3551 et seq.)*

### CARGOS DOS
*(Uso de Armas de Fuego en Fomento del Tráfico de Drogas)*

*(...)*

*14. Alrededor o entre junio de 2003 y diciembre de 2014, siendo ambas fechas aproximadas e inclusivas, dentro de la jurisdicción extraterritorial de los Estados Unidos, los acusados (...) DANIEL RENDÓN HERRERA, también conocido como 'Don Mario', (...), en concierto con otros, utilizaron y portaron con conocimiento e intención una o más armas de fuego durante y en relación a un delito de tráfico de drogas, a saber: el delito imputado en el Cargo Uno, y poseer con conocimiento e intención dichas armas de fuego para fomentar dicho delito de tráfico de drogas, una o más de las cuales fue blandida y disparada, y una o más de dichas armas de fuego fue una ametralladora.*

*(Título 18, Código de los Estados Unidos, Secciones 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 2 y 3551 et seq.)..."*[1]

Adicionalmente, el país requirente, en la Nota Verbal No. 0412 del 8 de marzo de 2016, señala:

*"Un auto de detención contra Daniel Rendón Herrera por estos cargos fue dictado el 18 de diciembre de 2014, por orden de la corte arriba mencionada. Dicho auto de detención permanece válido y ejecutable.*

*(...)*

*Todas las acciones adelantadas por el acusado en este caso fueron realizadas con posterioridad al 17 de diciembre de 1997..."*

4.      Que luego de formalizada la solicitud de extradición del ciudadano **DANIEL RENDÓN HERRERA**, el Ministerio de Relaciones Exteriores, a través de la Dirección de Asuntos Jurídicos Internacionales, mediante oficio DIAJI No. 0545 del 8 de marzo de 2016, conceptuó:

"Conforme a lo establecido en nuestra legislación procesal penal interna, se informa que es del caso proceder con sujeción a los instrumentos internacionales vigentes entre la República de Colombia y los Estados Unidos de América.

En consecuencia, es preciso señalar que, se encuentra vigente para las Partes, la *'Convención de Naciones Unidas contra el tráfico ilícito de estupefacientes y*

---
[1] Folios 156 al 162 del Cuaderno del Ministerio de Justicia y del Derecho.


MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL
ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

22

Hoja No. 6 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

---

*sustancias psicotrópicas',* suscrita en Viena el 20 de diciembre de 1988[2]. En ese sentido, el artículo 6, numerales 4 y 5 del precitado tratado disponen lo siguiente:

*'4. Las Partes que no supediten la extradición a la existencia de un tratado reconocerán los delitos a los que se aplica el presente artículo como casos de extradición entre ellas.*

*5. La extradición estará sujeta a las condiciones previstas por la legislación de la Parte requerida o por los tratados de extradición aplicables, incluidos los motivos por los que la Parte requerida puede denegar la extradición.'*

Así mismo, la *'Convención de las Naciones Unidas contra la Delincuencia Organizada Transnacional',* adoptada en New York, el 27 de noviembre de 2000[3], que en su artículo 16, numerales 6 y 7, prevé lo siguiente:

*'6. Los Estados Parte que no supediten la extradición a la existencia de un tratado reconocerán los delitos a los que se aplica el presente artículo como casos de extradición entre ellos*

*7. La extradición estará sujeta a las condiciones previstas en el derecho interno del Estado Parte requerido o en los tratados de extradición aplicables, incluidas, entre otras, las relativas al requisito de una pena mínima para la extradición y a los motivos por los que el Estado Parte requerido puede denegar la extradición'.*

De conformidad con lo expuesto, y a la luz de lo preceptuado en los artículos 491 y 496 de la Ley 906 de 2004, los aspectos no regulados por las Convenciones aludidas, el trámite se regirá por lo previsto en el ordenamiento jurídico colombiano...".

5.    Que perfeccionado así el expediente de extradición del ciudadano **DANIEL RENDÓN HERRERA**, el Ministerio de Justicia y del Derecho, mediante oficio No. OFI16-0006078-OAI-1100 del 9 de marzo de 2016, lo remitió a la Sala de Casación Penal de la H. Corte Suprema de Justicia para el concepto correspondiente.

6.    Que la Sala de Casación Penal de la H. Corte Suprema de Justicia, mediante pronunciamiento del 23 de noviembre de 2017, emitió **concepto parcialmente favorable** a la extradición del ciudadano colombiano **DANIEL RENDÓN HERRERA**.

En ese sentido, la H. Corporación emitió **concepto favorable** únicamente por el **Cargo Uno** (Empresa ilícita ininterrumpida), **violación uno** del mismo cargo (Concierto para producir y distribuir cocaína internacionalmente) cometido entre el 21 de septiembre de 2013 y diciembre de 2014 y **violaciones 26 a 32** (Tráfico de estupefacientes) del citado cargo; y **desfavorable** por los hechos constitutivos de empresa ilícita ininterrumpida y ⸱

---

[2] Artículo 3° numeral 1° literal a.
[3] Artículo 3, párrafo 1, apartados a) o b).


MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

concierto para producir y distribuir cocaína internacionalmente ocurridos entre junio de 2003 y 20 de septiembre de 2013, así como tráfico de estupefacientes acaecidos hasta antes de abril de 2009 (**Violaciones 2 a 25** del **Cargo Uno**), concierto para cometer delitos de homicidio (**Violación 33** del **Cargo Uno**) y por el **Cargo Dos** (uso de armas de fuego).

Sobre el particular, la H. Corporación precisó:

*"En consecuencia, si del **punible de tráfico de estupefacientes** se trata, no se ha proferido en nuestro país ningún fallo que comprenda hechos de esa naturaleza acaecidos entre abril de 2009 y diciembre del 2014, **por eso no opera la causal de improcedencia de la extradición derivada de la cosa juzgada en relación con las infracciones 26 a 32 del cargo uno, por cuanto, se reitera, son hechos ocurridos después de abril de 2009.***

*Y en lo que hace al **punible de concierto para delinquir**, o empresa ilícita ininterrumpida según la denominación del Estado requirente, dado el carácter de permanencia que ostenta dicho delito debe decirse que las sentencias irrogadas en nuestra nación abarcan hechos ocurridos hasta el 20 de septiembre de 2013, fecha en que el requerido preacordó la aceptación de cargos por ese ilícito, por ende el concepto por el mismo **será favorable pero sólo en cuanto comprende el período del 21 de septiembre de 2013 a diciembre de 2014.***

*(...)*

*En este evento en suplencia de la acusación se preacordó la aceptación de cargos el 20 de septiembre de 2013, por eso ha de entenderse que la sentencia del 5 de noviembre de 2013 comprendió los sucesos verificados hasta aquella fecha constitutivos del concierto para delinquir, de modo que la cosa juzgada los abarca, no así a los ocurridos con posterioridad.*

*Nada de lo anterior sufre variación por los documentos que con sus alegaciones adjuntó la defensora, pues además de inoportunos, el auto inhibitorio allegado no se refiere a ninguno de los hechos por los cuales se conceptuará favorablemente a la extradición, sino a un presunto tráfico de sustancias para el procesamiento de narcóticos, al paso que el elemento magnético aportado no contiene información alguna.*

*8. Recapitulando: i) como los hechos considerados homicidio (**Violación 33 del cargo uno**) y tráfico y utilización de armas de fuego (**Cargos dos del indictment**) no sucedieron en el exterior, el concepto de la Corte será desfavorable a la extradición solicitada por ellos.*

*ii) Como ya la Corte emitió un concepto favorable de extradición por el delito de tráfico de estupefacientes acaecido hasta abril de 2009 y por el*

MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

*mismo el Gobierno Nacional ya dispuso la extradición, el que se producirá en esta oportunidad será desfavorable al ocurrido hasta esa fecha (Violaciones 2 a 25 del cargo uno) y favorable por los episodios sucedidos entre abril de 2009 y diciembre de 2014 (Violaciones 26 a 32 del cargo uno).*

*iii) Por cuanto la última sentencia de condena proferida en nuestro país en contra de Daniel Rendón Herrera por el delito de concierto para delinquir lo fue por hechos ocurridos hasta el 20 de septiembre de 2013, el concepto será desfavorable, en virtud de la cosa juzgada, por los cargos de empresa ilícita ininterrumpida y concierto con fines de narcotráfico (Cargo uno y violación uno del mismo), ocurridos hasta esa fecha y favorable por los verificados entre 21 de septiembre de 2013 y diciembre de 2014." (Se resalta)*

Adicionalmente, la H. Corporación señaló:

*"10. Por tanto, además de la anterior condición, en caso de que el Gobierno Nacional acoja este concepto, en cuanto favorable, le atañe, si en ejercicio de su competencia lo estima, subordinar la concesión de la extradición a las que considere oportunas, exigiendo en todo caso, que la persona solicitada no vaya a ser juzgada por hechos ocurridos antes del 17 de diciembre de 1997 o diversos de los que motivan la extradición, ni sometida a desaparición forzada, a torturas ni penas o tratos crueles inhumanos o degradantes, ni a las penas de destierro, prisión perpetua o confiscación, o a sanciones distintas de las que se le hubieren impuesto en la condena, y si la legislación del Estado requirente pena con la muerte el injusto que motiva la extradición, la entrega se hará bajo la condición de que tal pena sea conmutada, en orden a lo contemplado en el artículo 494 del Código de Procedimiento Penal.*

*El Gobierno debe, además, condicionar la entrega de Daniel Rendón Herrera a que se le respeten, como a cualquier otro nacional en las mismas condiciones, todas las garantías debidas a su condición de justiciable, en particular, a que tenga acceso a un proceso público sin dilaciones injustificadas, se presuma su inocencia, cuente con un intérprete, tenga un defensor designado por él o por el Estado, se le conceda el tiempo y los medios adecuados para que prepare la defensa, a presentar pruebas y controvertir las que se aduzcan en su contra, su situación de privación de la libertad se desarrolle en condiciones dignas, la sanción pueda ser apelada ante un tribunal superior y la pena privativa de la libertad tenga la finalidad esencial de reforma y readaptación social (Artículos 29 de la Carta; 9 y 10 de la Declaración Universal de Derechos Humanos; 5-3.6, 7-2.5,8-1.2(a)(b)(c)(d)(e)(f)(g)(h).3.4.5, 9 de la Convención Americana de Derechos Humanos; 9-2.3, 10-1.2.3, 14-1.2.3,5, y 15 del Pacto Internacional de Derechos Civiles y Políticos).*

*A la par, el Gobierno debe condicionar la entrega a que el país reclamante, conforme con sus políticas internas sobre la materia, le ofrezca posibilidades racionales y reales para que el eventual extraditado pueda tener*


MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

424

Hoja No. 9 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

*contacto regular con sus familiares más cercanos, habida cuenta que la Constitución de 1991, en su artículo 42, reconoce a la familia como núcleo esencial de la sociedad, garantiza su protección y reconoce su honra, dignidad e intimidad, lo cual se refuerza con la protección adicional que a ese núcleo le otorgan la Convención Americana sobre Derechos Humanos (artículo 17) y el Pacto Internacional de Derechos Civiles y Políticos (artículo 23).*

### CONCEPTO:

*Por tanto, la CORTE SUPREMA DE JUSTICIA, SALA DE CASACION PENAL, emite:*

*1. Con los condicionamientos antes precisados, CONCEPTO FAVORABLE a la solicitud de extradición presentada por el Gobierno de los Estados Unidos en relación con el ciudadano Daniel Rendón Herrera, para que responda por el CARGO UNO (Empresa ilícita ininterrumpida), violación uno del mismo cargo (Concierto para producir y distribuir cocaína internacionalmente) cometido entre el 21 de septiembre de 2013 y diciembre de 2014 y violaciones 26 a 32 (Tráfico de estupefacientes) del citado cargo, imputado en la resolución de acusación No. 14-0625(S-3)(DLI) proferida el 12 de agosto de 2015 en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York y,*

*2. CONCEPTO DESFAVORABLE por los hechos constitutivos de empresa ilícita ininterrumpida y concierto para producir y distribuir cocaína internacionalmente ocurridos entre junio de 2003 y 20 de septiembre de 2013, así como tráfico de estupefacientes acaecidos hasta antes de abril de 2009 (Violaciones 2 a 25 Cargo Uno del citado indictment), concierto para cometer delitos de homicidio (Violación 33 del Cargo Uno) y uso de armas de fuego (Cargo Dos). Esto sin perjuicio del concepto rendido por la Corte el 12 de noviembre de 2014, ni de la Resolución Ejecutiva 363 del 12 de diciembre del mismo año..."*

La H. Corporación aclaró que el presente concepto lo emite sin perjuicio del que rindió el 12 de noviembre de 2014, también parcialmente favorable a la extradición del señor **RENDÓN HERRERA**, y de lo dispuesto en la Resolución Ejecutiva N° 363 del 12 de diciembre de 2014, expedida por el Gobierno Nacional.

**7.** Que en atención al concepto emitido por la Sala de Casación Penal de la H. Corte Suprema de Justicia, y teniendo en cuenta que de acuerdo con lo establecido en el artículo 501 de la Ley 906 de 2004, el Gobierno Nacional está en libertad de obrar según las conveniencias nacionales, **concederá la extradición** del ciudadano colombiano **DANIEL RENDÓN HERRERA**, identificado con la Cédula de Ciudadanía N° 8.011.256, para que comparezca a juicio ante las autoridades de los Estados Unidos de América por el **Cargo Uno** (Empresa ilícita ininterrumpida); **violación uno** (Concierto para producir y distribuir cocaína internacionalmente) cometida entre el 21 de septiembre de



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

26

· . 424

Hoja No. 10 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

2013 y diciembre de 2014 del mismo cargo; y **violaciones 26 a 32** (Tráfico de estupefacientes), imputado en la Acusación Sustitutiva No. 14-0625 (S-3) (DLI), dictada el 12 de agosto de 2015, en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York; **y negará la extradición** del mencionado ciudadano por las **violaciones 2 a 25** del **Cargo Uno** (hechos constitutivos de empresa ilícita ininterrumpida y concierto para producir y distribuir cocaína internacionalmente ocurridos entre junio de 2003 y 20 de septiembre de 2013, así como tráfico de estupefacientes acaecidos hasta antes de abril de 2009); la **violación 33** del **Cargo Uno** (concierto para cometer delitos de homicidio) y por el **Cargo Dos** (uso de armas de fuego), imputados en la misma acusación.

**8.**    De la documentación aportada al expediente se puede establecer que el ciudadano **DANIEL RENDÓN HERRERA** se encuentra condenado en Colombia y en su contra se adelantan investigaciones penales.

En efecto se advierte que fue condenado mediante sentencia proferida el 30 de septiembre de 2008, por el Juzgado Cuarto Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2008-00011-00** por el delito de concierto para delinquir 153 meses de prisión; sentencia condenatoria proferida el 20 de septiembre de 2010, por el Juzgado Cuarto Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2010-00023-00**, por el delito de concierto para delinquir agravado, en la que fue condenado a la pena de 67 meses y 15 días de prisión; sentencia condenatoria proferida el 24 de septiembre de 2010, por Juzgado Cuarto Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2010-0056**, por el delito de desaparición forzada y homicidio en persona protegida, en la que fue condenado a la pena de 288 meses de prisión; sentencia condenatoria proferida el 5 de enero de 2011, por el Juzgado Primero Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2010-0007700**, por el delito de homicidio, secuestro simple y concierto para delinquir, en la que fue condenado a la pena de 17 años y 2 meses de prisión; sentencia condenatoria proferida el 6 de abril de 2011, por el Juzgado Once Penal del Circuito Especializado de Bogotá, dentro del radicado N° **2011-00009-00**, por el delito de homicidio en persona protegida, en la que se le impuso la pena de 230 meses de prisión; sentencia condenatoria proferida el 19 de mayo de 2011, por el Juzgado Segundo Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2010-00119**, por el delito de homicidio agravado, en la que se le impone la pena de 189 meses y 22 días de prisión; sentencia condenatoria proferida el 14 de octubre de 2011, por el Juzgado Segundo Penal del Circuito Especializado de Villavicencio, Meta, dentro del radicado N° **2010-00008-00**, por el delito de homicidio en persona protegida, en la que fue condenado a 480 meses de prisión, sentencia cuya ejecución es vigilada por el Juzgado Tercero de Ejecución de Penas y Medidas de Seguridad de Ibagué; y sentencia condenatoria proferida el 5 de noviembre de 2013,



MINISTERIO DE JUSTICIA Y DEL ...
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

27

por el Juzgado Segundo Penal del Circuito Especializado de Antioquia, en funciones de conocimiento, dentro del radicado N° **2013-00228**, por los delitos de concierto para delinquir, cinco homicidios agravados y fabricación, tráfico y porte de armas y municiones de uso privativo de las fuerzas armadas, en la que se le impuso una pena de 33 años de prisión.

El Juzgado Tercero de Ejecución de Penas y Medidas de Seguridad de Descongestión de Ibagué, Tolima, en pronunciamiento del 27 de marzo de 2015[4] decretó la acumulación jurídica de las penas impuestas en las sentencias del 6 de abril de 2011, 19 de mayo de 2011 y 14 de octubre de 2011, quedando acumulada la pena, en forma definitiva, en cuarenta (40) años de prisión.

Se observa de la documentación allegada al expediente que el señor **RENDÓN HERRERA** se encuentra investigado en varios procesos que se adelantan en el marco de la Ley 600 de 2000, en los que fue escuchado en indagatoria con la finalidad de esclarecer delitos cometidos durante su militancia cuando fungía como comandante administrativo y financiero del Bloque Centauros de las Autodefensas Unidas de Colombia AUC y se le investiga, bajo la normatividad de Ley 906 de 2004, por la conformación de otros grupos armados ilegales.

Se encuentra igualmente, que la Sala de Justicia y Paz del Tribunal Superior del Distrito Judicial de Bogotá, mediante pronunciamiento del 9 de septiembre de 2013, dentro del Radicado N° **2007 83019**, resolvió:

> *"PRIMERO. EXCLUIR a DANIEL RENDÓN HERRERA, identificado con la cédula de ciudadanía No. 8.011.256 del municipio de Amalfi – Antioquia de la especial jurisdicción de Justicia y Paz.*
>
> *SEGUNDO. La decisión de exclusión no implica la pérdida de derechos de las víctimas y por lo tanto los bienes entregados con ocasión a la militancia de DANIEL RENDÓN HERRERA en el Bloque Centauros, relacionados ante esta Sala de Conocimiento, continuarán bajo la administración del Fondo para la Reparación de las Víctimas..."*

En dicho pronunciamiento, el H. Tribunal precisó:

> *"5.2.26 De lo anterior, se concluye que el presupuesto personal, relativo, entre otros, a no delinquir luego de la desmovilización, exigido por la ley de Justicia y Paz para permanecer en esta jurisdicción, fue defraudado por el postulado DANIEL RENDON HERRERA. En consecuencia, resulta preciso que esta Sala declare su Exclusión del Sistema Transicional, para que sea dejado (sic)*

---

[4] Folios 156 al 159 de la Corte Suprema de Justicia.



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

*disposición de la jurisdicción ordinaria ante la que deberá responder por los delitos confesados y no confesados.*

*(...)*

*5.2.31 Para el caso de DANIEL RENDON HERRERA, otro evento impide su permanencia en esta jurisdicción y es el relativo a la manifestación que él mismo hiciera ante la Sala de Casación Penal de la Honorable Corte Suprema de Justicia, al señalar que luego de la desmovilización se rearmó para conformar otros grupos de operación ilícita en la zona de Urabá..."*

En punto del tema, respecto del momento de la entrega del reclamado, es importante advertir que la Sala de Casación Penal de la Corte Suprema de Justicia, en el concepto emitido para este caso, señaló que no accedía a la alegación de la defensa para que, por virtud del Derecho Internacional Humanitario y las prerrogativas que conciernen a las víctimas, el concepto fuera desfavorable a la extradición del señor **RENDÓN HERRERA**, pero, que al igual que lo hizo en el concepto rendido el 12 de noviembre de 2014 (CP188-14, Rad. No. 42711), lo condicionaba a que el Gobierno autorizara la entrega de este ciudadano después de que el requerido rindiera las versiones que estuvieren pendientes de tramitarse, "con el fin de amparar precisamente de dicho modo los derechos de las víctimas".

Es importante tener en cuenta que el Gobierno Nacional en su momento, frente a la solicitud de extradición que formalizó el Gobierno de los Estados Unidos de América para este mismo ciudadano, a través de la Nota Verbal N° 2396 del 13 de noviembre de 2013, atendiendo el concepto de la Corte Suprema de Justicia rendido el 12 de noviembre de 2014, mediante Resolución Ejecutiva N° 363 del 12 de diciembre de 2014, concedió la extradición de este ciudadano por los cargos 1 y 2 y la negó por el cargo 3, imputados en la acusación sustitutiva No. S6 04 Cr. 962 (LAP), dictada el 1 de octubre de 2013, en la Corte Distrital de los Estados Unidos para el Distrito Sur de Nueva York; y difirió la entrega hasta tanto el requerido rindiera las versiones que estuvieran pendientes de tramitarse, con el fin de amparar de este modo los derechos de las víctimas, advirtiendo que el plazo que se otorgaba para la ejecución de la entrega no confería derecho alguno al extraditado sino que el mismo se daba con la finalidad de facilitar la colaboración con la justicia para que el ciudadano requerido pudiera ser escuchado en las versiones, interrogatorios e indagatorias que estuvieran pendientes de tramitarse; y en esa medida, el Ministerio de Justicia y del Derecho, periódicamente, cada tres (3) meses, solicitaría información al Fiscal General de la Nación sobre la colaboración que estuviera prestando el ciudadano requerido y las diligencias que tuviere pendientes.

Luego de varios informes periódicos, el Fiscal Delegado Contra la Criminalidad Organizada, mediante comunicación 20177770017373 del 2 de noviembre de 2017,


MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

Hoja No. 13 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

---

envió a la Dirección de Asuntos Internacionales de la Fiscalía General de la Nación, el **informe final** correspondiente a las actividades desarrolladas por el Grupo de Articulación para el apoyo de las investigaciones relacionadas con el ciudadano colombiano **DANIEL RENDÓN HERRERA**, alias "Don Mario", radicado en el Ministerio de Justicia y del Derecho el 8 de noviembre de 2017.

En la mencionada comunicación, el Delegado Contra la Criminalidad Organizada informó que *"De acuerdo con el cronograma de actividades propuesto por esta Delegada (antes Dirección de Articulación de Fiscalías Nacionales Especializadas),las diligencias que se encontraban pendientes (indagatorias, interrogatorios, declaraciones juradas y sentencias anticipadas) se realizaron en la medida de lo posible, teniendo en cuenta la magnitud y complejidad de los fenómenos criminales asociados al señor Rendón Herrera y al extenso ámbito espacio – temporal de ocurrencia de los mismos..."*

Precisó la mencionada autoridad que para el cumplimiento de dichas diligencias se atendieron criterios de priorización de situaciones y casos con observancia y reconocimiento de los derechos que le asisten a las víctimas directas e indirectas de las conductas criminales reconocidas y aceptadas por el señor **RENDÓN HERRERA**.

Por último manifestó el Delegado que *"Las investigaciones iniciadas con fundamento en la colaboración ofrecida por el extraditable se continuarán desarrollando en las Direcciones Especializadas contra las Organizaciones Criminales, contra el Narcotráfico, de Justicia Transicional, de Extinción del Derecho de Dominio y contra el Lavado de Activos, con el fin de garantizar los intereses de la administración de justicia y amparar los derechos de las víctimas.*

*Así las cosas, corresponde ahora al Gobierno Nacional decidir sobre la entrega del ciudadano colombiano Daniel Rendón Herrera a la autoridad extranjera que requirió su extradición..."*

Y en el mismo sentido lo indicó la Dirección de Asuntos Internacionales en el oficio remisorio[5] de la mencionada comunicación:

*"En el mencionado escrito de informa que las diligencias se encontraban pendientes se realizaron en la medida de lo posible, conforme a un cronograma establecido, motivo por el cual esta entidad queda a la espera del pronunciamiento del Gobierno Nacional, en relación con la entrega en extradición a los Estados Unidos de América del mencionado ciudadano, la cual fue diferida, mediante Resolución Ejecutiva No. 363 del 12 de diciembre de 2014..." (Se resalta).*

---

[5] Oficio N° 20171700082671 del 7 de noviembre de 2017.

MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

Hoja No. 14 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

En el informe final se menciona lo siguiente:

*"...El ente acusador dispuso la reactivación de investigaciones suspendidas por cuenta de la Ley 975 de 2005 (Ley de Justicia y Paz), una vez la judicatura decretó la exclusión del trámite de justicia transicional de alias "Don Mario".*

*Las víctimas han tenido la oportunidad de participar en los escenarios dispuestos para ello, en garantía del acceso a la administración de justicia, la verdad y la no repetición, principios fundamentales de la ley ordinaria y transicional colombiana.*

*Adicionalmente, Rendón Herrera aceptó responsabilidad por varios hechos delictivos en los cuales tuvo participación, para lo cual realizó aportes importantes acerca de las causas y móviles que generaron la victimización de centenares de personas.*

*Las investigaciones y juicios que se adelantan en Colombia seguirán su curso legal, por manera que los derechos de las víctimas no se verán conculcados por la extradición de Daniel Rendón Herrera."*

Si bien la Sala de Casación Penal de la Corte Suprema de Justicia, al igual que lo hizo en el concepto rendido el 12 de noviembre de 2014 (CP188-14, Rad. No. 42711), condicionó en este caso su concepto a que el Gobierno Nacional autorice la entrega de este ciudadano después de que el requerido rinda las versiones que estén pendientes de tramitarse, debe tenerse en cuenta lo señalado en el informe final allegado por el Delegado Contra la Criminalidad Organizada de la Fiscalía General de la Nación, en el que, de forma expresa, indica que las diligencias que se encontraban pendientes (indagatorias, interrogatorios, declaraciones juradas y sentencias anticipadas) **"se realizaron en la medida de lo posible, teniendo en cuenta la magnitud y complejidad de los fenómenos criminales asociados al señor Rendón Herrera y al extenso ámbito espacio – temporal de ocurrencia de los mismos"..."**

Bajo ese entendido, configurada en este evento la hipótesis prevista en el artículo 504 de la Ley 906 de 2004, que le otorga al Gobierno Nacional la facultad discrecional de diferir o no la entrega del ciudadano requerido, el Gobierno Nacional, teniendo en cuenta lo señalado en precedencia, en atención a la discrecionalidad que le otorga la norma en mención para decidir sobre el momento de la entrega de la persona reclamada y lo plasmado en el informe final[6] enviado por el Delegado Contra la Criminalidad Organizada, mediante comunicación 20177770017373 del 2 de noviembre de 2017, a la Dirección de Asuntos Internacionales de la Fiscalía General de la Nación y allegado posteriormente al Ministerio de Justicia y del Derecho, no considera conveniente en este

---

[6] "Informe de Gestión del Grupo de Articulación para apoyar las investigaciones contra Daniel Rendón Herrera"



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA EN LOS ARCHIVOS DE ESTE MINISTERIO

caso, diferir o aplazar la entrega del ciudadano colombiano **DANIEL RENDÓN HERRERA** y por el contrario, ordenará que se lleve a cabo la misma, previo el cumplimiento de unos condicionamientos que serán establecidos en el presente acto administrativo, con la advertencia al Estado requirente de que cumplida una eventual condena por los hechos por los que se concede la extradición o cuando de algún modo cese el motivo de detención, el ciudadano requerido deberá retornar al país para cumplir las condenas impuestas.

**9.** Que el Gobierno Nacional, en atención a lo dispuesto en el inciso primero del artículo 494 de la Ley 906 de 2004, debe exigir al Gobierno de los Estados Unidos de América que el ciudadano requerido no sea juzgado por un hecho anterior y distinto del que motiva la concesión de la extradición. De igual forma se advierte que no podrán ser incluidos hechos o material probatorio anterior al 17 de diciembre de 1997.

**10.** Que el Gobierno Nacional ordenará la entrega del ciudadano **DANIEL RENDÓN HERRERA** bajo el compromiso del Estado requirente de cumplir las condiciones establecidas en el inciso segundo del artículo 494 de la Ley 906 de 2004, esto es, conmutar la pena de muerte, si es del caso, y asegurar que el ciudadano requerido no será sometido a desaparición forzada, a torturas ni a tratos o penas crueles, inhumanos o degradantes, ni a las penas de destierro, prisión perpetua y confiscación.

**11.** Que al ciudadano requerido le asiste el derecho de que se le reconozca en el Estado requirente el tiempo que permaneció detenido por cuenta del trámite de extradición, y para acreditar esa situación, podrá solicitar la respectiva constancia a la Fiscalía General de la Nación, por ser la entidad competente para esos efectos.

No obstante lo anterior, se advierte que tal y como ha sido costumbre, la Dirección de Gestión Internacional de la Fiscalía General de la Nación remite la certificación sobre el tiempo de detención de los ciudadanos requeridos por cuenta del trámite de extradición a la Dirección de Asuntos Migratorios, Consulares y Servicio al Ciudadano del Ministerio de Relaciones Exteriores, con el fin de que el Cónsul respectivo tenga conocimiento de esa situación.

Finalmente el Gobierno Nacional, por conducto del Ministerio de Justicia y del Derecho, remitirá copia de la presente decisión a la Dirección de Asuntos Migratorios, Consulares y Servicio al Ciudadano del Ministerio de Relaciones Exteriores para los fines indicados en la Directiva Presidencial No. 07 de 2005 y lo señalado por la H. Corte Suprema de Justicia en su concepto.

Por lo expuesto,



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

# RESUELVE:

**ARTÍCULO PRIMERO: Conceder la extradición** del ciudadano colombiano **DANIEL RENDÓN HERRERA**, identificado con la Cédula de Ciudadanía N° 8.011.256, para que comparezca a juicio ante las autoridades de los Estados Unidos de América por el **Cargo Uno** (Empresa ilícita ininterrumpida), **violación uno** (Concierto para producir y distribuir cocaína internacionalmente) cometida entre el 21 de septiembre de 2013 y diciembre de 2014 y **violaciones 26 a 32** (Tráfico de estupefacientes), imputado en la Acusación Sustitutiva No. 14-0625 (S-3) (DLI), dictada el 12 de agosto de 2015, en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York.

**ARTÍCULO SEGUNDO: Negar la extradición** del ciudadano colombiano **DANIEL RENDÓN HERRERA**, para ser juzgado por las **violaciones 2 a 25** del **Cargo Uno** (hechos constitutivos de empresa ilícita ininterrumpida y concierto para producir y distribuir cocaína internacionalmente ocurridos entre junio de 2003 y 20 de septiembre de 2013, así como tráfico de estupefacientes acaecidos hasta antes de abril de 2009); la **violación 33** del **Cargo Uno** (concierto para cometer delitos de homicidio) y por el **Cargo Dos** (uso de armas de fuego), imputados en la Acusación Sustitutiva No. 14-0625 (S-3) (DLI), dictada el 12 de agosto de 2015, en la Corte Distrital de los Estados Unidos para el Distrito Este de Nueva York.

**ARTÍCULO TERCERO: No diferir** la entrega de este ciudadano de conformidad con lo expuesto en la parte motiva de la presente resolución, con la advertencia al Estado requirente de que cumplida una eventual condena por los hechos por los que se concede la extradición o cuando de algún modo cese el motivo de detención, el ciudadano requerido deberá retornar al país para cumplir las condenas impuestas.

**ARTÍCULO CUARTO: Ordenar** la entrega del ciudadano **DANIEL RENDÓN HERRERA** al Estado requirente bajo el compromiso de que éste cumpla las condiciones establecidas en el inciso segundo del artículo 494 de la Ley 906 de 2004, esto es, conmutar la pena de muerte, si es del caso, y asegurar que el ciudadano requerido no será sometido a desaparición forzada, a torturas ni a tratos o penas crueles, inhumanos o degradantes, ni a las penas de destierro, prisión perpetua y confiscación.

**ARTÍCULO QUINTO: Advertir** al Estado requirente que el ciudadano extraditado no podrá ser juzgado ni condenado por un hecho anterior y distinto del que motiva la presente extradición, de conformidad con lo dispuesto en el inciso primero del artículo 494 de la Ley 906 de 2004. De igual forma se advierte que no podrán ser incluidos hechos o material probatorio anterior al 17 de diciembre de 1997.



MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO

Hoja No. 17 de la Resolución "Por la cual se decide sobre una solicitud de extradición".

**ARTÍCULO SEXTO:** Notificar personalmente la presente decisión al interesado, a su representante o apoderada, o a la persona debidamente autorizada por el interesado para notificarse, haciéndole saber que contra la misma procede el recurso de reposición, el cual podrá interponer por escrito en la diligencia o dentro de los diez (10) días siguientes a su notificación, de conformidad con lo dispuesto en el artículo 76 del Código de Procedimiento Administrativo y de lo Contencioso Administrativo.

**ARTÍCULO SÉPTIMO:** Una vez ejecutoriada la presente Resolución, enviar copia de la misma a la Dirección de Asuntos Jurídicos Internacionales y a la Dirección de Asuntos Migratorios, Consulares y Servicio al Ciudadano del Ministerio de Relaciones Exteriores, al Delegado contra la Criminalidad Organizada de la Fiscalía General de la Nación, al Juzgado Segundo Penal del Circuito Especializado de Antioquia en funciones de conocimiento, a los Juzgados Primero y Cuarto Penal del Circuito Especializado de Villavicencio, Meta, al Juzgado Tercero de Ejecución de Penas y Medidas de Seguridad de Descongestión de Ibagué, Tolima, y al Fiscal General de la Nación, para lo de sus respectivas competencias.

**ARTÍCULO OCTAVO:** La presente Resolución rige a partir de la fecha de su ejecutoria.

**Publíquese** en el Diario Oficial, **notifíquese** al ciudadano requerido o a su apoderada o a la persona debidamente autorizada por el interesado para notificarse, **comuníquese** al Ministerio de Relaciones Exteriores, a las autoridades judiciales mencionadas y a la Fiscalía General de la Nación y **cúmplase**.

Dada en Bogotá, D.C. a

**14 DIC 2017**

EL MINISTRO DE JUSTICIA Y DEL DERECHO,

ENRIQUE GIL BOTERO

MINISTERIO DE JUSTICIA Y DEL DERECHO
ÁLVARO GÓMEZ TRUJILLO
SECRETARIO GENERAL

ES COPIA DEL ORIGINAL QUE REPOSA
EN LOS ARCHIVOS DE ESTE MINISTERIO



# REPÚBLICA DE COLOMBIA
## MINISTERIO DE RELACIONES EXTERIORES
# APOSTILLE
### (Convention de La Haye du 5 Octobre 1961)

**País:** **REPUBLICA DE COLOMBIA**
(Country: - Pays:)

**El presente documento público**
(This public document - Le présent acte public)

**Ha sido firmado por:** **GOMEZ TRUJILLO ALVARO DE FATIMA**
(Has been signed by:
A été signé par:)

**Actuando en calidad de:** **SECRETARIO GENERAL**
(Acting in the capacity of:
Agissant en qualité de:)

**Lleva el sello/estampilla de:** **MINISTERIO DE JUSTICIA Y DEL DERECHO**
(Bears the seal/stamp of:
Est revêtu du sceau de/timbre de:)

**Certificado**
(Certified - Attesté)

**En:** **BOGOTA D.C**
(At: - À:)

**El:** **4/25/2018 11:07:15 a. m.**
(On: - Le:)

**Por:** **APOSTILLA Y LEGALIZACIÓN**
(By: The Ministry of Foreign Affairs of Colombia - Par: Ministère des Affaires Étrangères de la Colombie)

**No:** **ASEZ117212951**
(Under Number: - Sous le numéro:)

Firmado Digitalmente por: (Digitally Signed by:)
Ministerio de Relaciones Exteriores de Colombia
MARIA LUCIA FERNANDEZ CARDENAS
Reason: DOCUMENT AUTHENTICITY
BOGOTA - COLOMBIA

**Firma:** (Signature:)

---

**Nombre del Titular:** **DANIEL RENDON HERRERA**
(Name of the holder of document:
Nom du titulaire:)

**Tipo de documento:** **RESOLUCION**
(Type of document: - Type du document:)

**Número de hojas apostilladas: 17**
(Number of sheets: - Nombre de feuilles:)

013040005935773                          424 Expedido (mm/dd/aaaa): 12/14/2017

El Ministerio de Relaciones Exteriores, no asume la responsabilidad por el contenido del documento apostillado. Artículo 3 Ley 455/98

La autenticidad de esta apostilla puede ser verificada en el Registro Electrónico que se encuentra en la siguiente página web:
The authenticity of this Apostille may be verified by accessing the e-Register on the following web site:
L'authenticité de cette Apostille peut être vérifiée en accédant l'e-Registre sur le site web suivant:

## www.cancilleria.gov.co/apostilla



36

**REPUBLIC OF COLOMBIA**
**MINISTRY OF JUSTICE AND LAW**
**RESOLUTION No. 424 OF DECEMBER 14, 2017**

**DECIDING ON A REQUEST FOR EXTRADITION**

**THE PRESIDENT OF THE REPUBLIC OF COLOMBIA**
In exercise of his powers under Article 491 of Law 906/2004, and

**WHEREAS:**

**1.**    In Diplomatic Note No. 1835 of September 25, 2015, the Government of The United States of America, through its Embassy in Colombia, requested the provisional detention for purposes of extradition of the Colombian citizen **DANIEL RENDÓN-HERRERA**, wanted to appear for trial in the US District Court for the Middle District of Florida for participation in a continuing criminal enterprise and drugs offenses.

**2.**    Attending to this request the Acting Attorney General, in a Resolution of October 23, 2015 ordered the arrest for purposes of extradition of the Colombian citizen **DANIEL RENDÓN-HERRERA**, ID 8.011.256, served in his place of confinement on January 20, 2016 by the Criminal Investigation and Interpol Division of the National Police.

**3.**    In Diplomatic Note No. 0412 of March 8, 2016 the United States Embassy in Colombia formalized the request for extradition of the citizen **DANIEL RENDÓN-HERRERA**.

The Embassy, reported that this request for extradition for **DANIEL RENDÓN-HERRERA** is additional to the request for extradition made in Diplomatic Note 2396 of November 13, 2013, for charges before the <u>US District Court for the Southern District of New York</u>, partially approved by the Government, with delivery deferred for a subsequent date.

It states that the citizen **DANIEL RENDÓN-HERRERA** and is now required by the <u>US District Court for the Eastern District of New York</u>, to appear for participation in a continued criminal enterprise, and narcotics offences.

Superseding Indictment 14-0625 (S-3) (DLI) of August 12, 2015 in the US District Court for these Eastern District of New York, contains the following charges:

***Count 1***
***(uninterrupted illegal enterprise).***

(...)

*9. Around or between and including June 2003 and December 2014, and within the extraterritorial jurisdiction of the United States, the accused (...) DANIEL RENDÓN-HERRERA, a.k.a. "Don Mario" (...), in conspiracy with others, was*

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

1

involved, was knowledge and intent, in an uninterrupted illegal enterprise in which the accused (...) *DANIEL RENDÓN-HERRERA* (...), committed Offenses of Title 21 USC Sections 846, 848(e), 952(a) 959(a), 960 and 963, including Offenses 1-33 described below, which were part of a continuous series of Offenses of those laws performed by the accused (...) *DANIEL RENDÓN-HERRERA* (...), In a conspiracy with five or more persons with regard to whom the accused (...) *DANIEL RENDÓN-HERRERA* (...), occupied the post of supervision and administration, and that in that continuous series of offenses, the accused (...), *DANIEL RENDÓN-HERRERA* (...), obtained substantial revenues and funds. The continuous series of offenses as defined in Title 21, USC Section 848 (C), include Counts 1-33 described as follows:

## *Offense 1*
### *(Conspiracy to produce and distribute cocaine internationally).*

10. Around or between June 2003 and December 2014, both dates being approximate and inclusive, and in the extraterritorial jurisdiction of the United States, the accused (...) *DANIEL RENDÓN-HERRERA, aka "Don Mario"* (...), In constant concert with others, conspired with knowledge and intent to produce and distribute 5 kg or more of a substance which contained can cocaine, a category-II controlled substance, was knowledge and intent that said substance would be illegally imported into the United States from a place outside the United States in Offense of Title 21, USC Sections 959(a), 959(c), 960(a)(3), 960(b)(1) (B) (ii) and 963.

## *Offenses 2-32*
### *(International distribution of cocaine)*

11. Around or between the dates indicated below, all dates being approximate and inclusive, and within the extraterritorial jurisdiction of the United States, the accused (...) *DANIEL RENDÓN-HERRERA, a.k.a. "Don Mario"*, (...), in concert with others, distributed with knowledge and intent a controlled substance, knowingly and in with the intention that substance would be illegally imported into the United States from a place outside the United States, crimes which involved a substance which contained cocaine a list category-two controlled substance, whose quantities are presented here below, in Offense of Title 21 USC Sections 959(a), 959(c), 960(a)(3) and 960(b) (1) (B) (ii) and Title 18 US Code, Section 2.

| OFFENSE | APPROXIMATE QUANTITY (kg of cocaine) | APPROXIMATE DATE |
|---|---|---|
| 2 | 1600 | 18 June 2003 |
| 3 | 2020 | 3 August 2003 |
| 4 | 1800 | 15 August 2003 |
| 5 | 1650 | 28 August 2003 |
| 6 | 1200 | 28 September 2003 |
| 7 | 1400 | 3 September 2004 |

2

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

| 8 | 1796 | 19 September 2004 |
|---|------|-------------------|
| 9 | 2000 | 22 October 2004 |
| 10 | 1670 | 16 November 2004 |
| 11 | 1868 | 19 November 2004 |
| 12 | 2090 | 25 November 2004 |
| 13 | 2060 | 27 January 2005 |
| 14 | 1811 | 2 June 2005 |
| 15 | 2000 | 26 August 2005 |
| 16 | 1700 | 10 January 2006 |
| 17 | 1940 | 20 May 2006 |
| 18 | 2100 | 10 November 2006 |
| 19 | 1870 | 3 January 2007 |
| 20 | 2100 | 19 April 2007 |
| 21 | 2000 | 25 May 2007 |
| 22 | 2000 | 3 July 2007 |
| 23 | 2000 | 23 July 2007 |
| 24 | 2000 | 6 November 2007 |
| 25 | 1950 | 20 November 2007 |
| 26 | 1000 | December 2009 |
| 27 | 12000 | January 2010-January 2011 |
| 28 | 2000 | September 2011 |
| 29 | 2500 | October 2011 |
| 30 | 2000 | 10 November 2011 |
| 31 | 7000 | February 2012 |
| 32 | 2500 | March 2012 |

## Offense 33
## Conspiracy for homicide (rival drug traffickers)

*12. Around or between June 2003 and December 2014, both dates being approximate and inclusive, in the extraterritorial jurisdiction of the United States, the accused (...) DANIEL RENDÓN-HERRERA, aka "Don Mario", (...) In concert with others and while participating in one or more crimes in accordance with Section 960(b)(1) Title 21 USC, namely, crimes described in offenses 1-32, conspired with knowledge and intent to kill and cause the intentional death of one or more persons, that is, leaders, members, or associates of rival drug-trafficking organizations, and those deaths resulted in the Offense of Title 21 USC Sections 848(e)(1)(A) and 846.*

*(Title 21, USC Sections 848 (a) and 848 (c); Title 18 USC Sections 3238 and 3551ff).*

## COUNT 2
## Use of firearms to promote drug-trafficking
(...)

*14. Around or between June 2003 and December 2014, both states being approximate and inclusive, was in the extraterritorial jurisdiction of the United States, the accused (...) DANIEL RENDÓN-HERRERA, also known as "Don*

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

3

*Mario", (...), In concert with others, used and carried with knowledge and intent one or more firearms during and in relation to a crime of drug-trafficking, namely the crime attributed to them in Count one, and position with knowledge and of intent that certain firearms were to promote the said crime of drug trafficking, and one or more of which of them was brandished and fired, and one or more of said firearms was a machine gun.*

*(Title 18, USC Sections 924(c)(1)(A) (i), 924(c)(1)(A)(ii). 924(c)(1)(A)(iii), 924(c)(1)(B) (ii), 2 and 3551ff)...")*[1].

Additionally, Diplomatic Note No. 0412 of March 8, 2016 stated that in this case:

> *"An order for detention against* **DANIEL RENDÓN-HERRERA** *these charges was issued on December 18, 2014 by order of the above court. This order for detention remains valid and enforceable.*

*(...)*

> " *All the acts of the accused in this case were performed prior to December 17, 1997....,"*

4. Once the request for extradition of citizen **DANIEL RENDÓN-HERRERA** was formalized, the Ministry of Foreign Affairs, through its International Legal Affairs Office, issued Communication DIAJI No.0545 of March 8, 2016 with its opinion:

> "As provided in our internal criminal legislation, it is informed that it is appropriate to proceed, subject to international instruments in force, between the Republic of Colombia and the United States of America.

> "Therefore, it must be noted that the *UN Convention against the illicit Traffic in Narcotic Drugs and Psychotropic Substances*" signed in Vienna on 1988[2] between the Parties is in force. The foregoing without prejudice to the foregoing, Articles 6.4 and 6.5 of this international instrument provide the following:

> "[...]

>> "4. The Parties which do not subject extradition to the existence of a treaty will recognize the offenses provided for in this Article as extradition cases between them.

>> "5. Extradition will be subject to the conditions foreseen by the legislation of the required Party or to the applicable extradition treaties, including the reasons for which the Party required may deny extradition.

---

[1] Folios 156-162, Ministry of Justice Files
[2] Article 3.1.a

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

4

*[...]"*

Also, *Articles 16.6 and 16.7 of the United Nations Convention against Transnational Organized Crime* adopted in New York, on November 27, 2003[3] states the following:

> *6. States Parties which do not subject extradition to the existence of a treaty, undertake to include such offenses as extraditable offenses in every extradition treaty to be concluded between them.*

> *7. Extradition shall be subject to the conditions provided for by the domestic law of the requested State Party or by applicable extradition treaties, including, inter alia, conditions in relation to the minimum penalty requirement for extradition and the grounds upon which the requested State Party may deny extradition'.*

Therefore, and in the light of the terms of Articles 491 and 496 of Law 906/2004, in matters not regulated by the above mentioned Conventions, proceedings will follow provisions of the Colombian legal order..."

**5.** The file of the request for the extradition **DANIEL RENDÓN-HERRERA** thus being complete, the Ministry of Interior and Justice and Law, in Communication No. 0FI17-0006078-OAI-1100 of March 9, 2016, sent it to the Criminal Cassation Division of the Supreme Court of Justice for the Court to give its opinion

**6.** The Criminal Cassation Division of the Supreme Court of Justice, in pronouncement of November 23, 2017 issued a favorable opinion to the extradition of the citizen, **DANIEL RENDÓN-HERRERA.**

In this sense, the Court issued a **favorable opinion** only for Count 1 (uninterrupted illegal enterprise), **Offense** 1 of the same kind (conspiracy to produce and distribute cocaine internationally), committed between September 21, 2013 and December 2014 and **offenses 26-32** (drug-trafficking), of that kind; and an **unfavourable opinion** for the acts which constituted the uninterrupted illegal enterprise and conspiracy to produce and distribute cocaine internationally, occurring between June 2003 and September 21|, 2013, and drug-trafficking occurring up to before April 2009 (**offenses 2-25, Count 1**), conspiracy to commit crimes of homicide (**Offense 33 of Count 1**) and Count 2 ( use of firearms).

And the Court said:

> *"In consequence, in **the case of the crime of drug-trafficking**, there has been no decision in this country which comprises acts of this nature occurring between April 2009 and December 2014, and therefore **there is no cause to place extradition out of order derived from res judicata in relation to Offenses 26-32 of Count 1, because, we repeat, they are events which occurred after April 2009.***

---

[3] Article 3, para 1 a) or b)

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

*And with regard to conspiracy to commit an offense, or "uninterrupted illegal enterprise" in the terms of the State requiring, given the character of permanence which that crime has, it should be said that the sentences passed in Colombia, events occurring up to September 20, 2013, which state that the person required made a preliminary agreement accepting charges for this crime, and indeed, the opinion on the same would be favorable, but only with regard to the period September 21, 2013-December 2014.*

*(...)*

*In this event, and in the indictment, there was a preliminary plea-bargaining agreement accepting the charges on September 20, 2013, and in this case, it must be understood that the decision of November 5, 2013 comprised the events performed up to that date which constituted a conspiracy to commit an offence, such that they are covered by res judicata, whereas the subsequent events are not.*

*None of the foregoing changes because the documents attached by the defense with her pleadings, in addition to being inopportune, the order inhibitory order produced does not refer to any of the events for which a favorable opinion is given on extradition, but on alleged trafficking in substances for the processing of drugs, and the magnetic element supplied contains no information at all.*

*8. Recapitulating : (i) As the acts considered to be **homicide (Offense 33, Count 1) and trafficking and use of firearms (Count 2 of the indictment), did not occur abroad, the opinion of the Court will be favorable** to the extradition request.*

*ii) As the court has already issued a favorable opinion on extradition for the crime of drug-trafficking occurring up to April 2009 and same reason the Government has already ordered extradition, the decision produced on this occasion will be unfavorable to events occurring up to that date (offenses 2-25, Count 1), and favorable for the events occurring between April 2000 and December 2014 (Offenses 26-32, Count 1).*

*iii) Since the most recent sentence of conviction issued in our country against **DANIEL RENDÓN-HERRERA** for the crime of conspiracy to commit an offense was for events occurring up to September 20, 2013, the opinion will be unfavorable, due to res iudicata, for the accounts of uninterrupted illegal enterprise and conspiracy of drug-trafficking purposes (and Offense 1 one of the same), occurring up to that date, and favorable for those occurring between September 21, 2013 and December 2014" (emphasis added).*

The Court further said:

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

*"10. Therefore, in addition to the previous condition, if the Government accepts this opinion, it will, if in exercise of its competency it deems convenient, subordinate extradition to the conditions it deems appropriate, and will request, at any event, that the person required will not be tried for acts committed prior to December 17,1997, nor for other acts than those that motivate extradition, nor subject to forced disappearance, torture, nor cruel, inhuman or degrading penalties or treatment, exile, life imprisonment or confiscation, nor to sanctions which would have been imposed, and if the If the foreign legislation allows imposition of death penalty, delivery made be made on the condition that such sentence will be commuted as provided for in Article 494 of the Criminal Procedure Code.*

*Likewise, the Government must make it a condition of delivery of* **DANIEL RENDÓN-HERRERA** *that all due guarantees be respected - as they would be for any other national in that situation - with corresponding to his status as an accused, specifically, that he must have access to a public trial without undue delay, that his innocence be presumed, that he be attended to by an interpreter, that he may have counsel appointed by his or by the State, and that he be given sufficient time and means to prepare his defense, and he may present evidence and dispute the evidence given against him, and his situation of deprivation of liberty shall be conducted in conditions of dignity, and any penalty eventually imposed upon him may not be over-harsh on him, and its essential purpose must be reform and social adaptation (See Articles 29 of the Constitution; 9 and 10 of the Universal Declaration of Human Rights; 5-3.6, 7-2.5, 8-1.2 (a) (b) (c ) (d) ( e) (f) (g) (h), 9 of the American Convention of Human Rights; 9-2.3, 10-1.2.3, 14-1-2.3.5 and 15 of the International Pact of Civil and Political Rights),*

*Further, the Government must make it a condition of delivery to the State Requiring, following its internal policies on the matter, must offer him real rational possibilities of regular contact with his close family, considering that Article 42 of the 1991 Constitution describes the family as the essential nucleus of society, and guarantees its protection Reinforced in the American Convention on Human Rights (Article 17) and the International Pact of Civil and Political Rights (Article 23)*

### OPINION

*Therefore, the Supreme Court of Justice Criminal Cassation Bench issues*

*1. With the conditions previously mentioned, A FAVORABLE OPINION on the extradition request presented by the United States Government in relation to the citizen* **DANIEL RENDÓN-HERRERA***, to answer for COUNT 1 (uninterrupted illegal enterprise), Offense of the same kind (conspiracy to produce and distribute cocaine internationally), committed between September 21, 2013 and December 2014, and Offenses 26-32 (drug-trafficking) in that Count, included in the indictment 14-0625 (S-3) (DLI) of August 12, 2015 in the US District Court for the Eastern District of New York and,*

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

> 2. AN UNFAVORABLE OPINION for the facts constituting uninterrupted illegal enterprise and conspiracy to produce and distribute cocaine internationally occurring between June 2003 and 20 September 2013, and drug-trafficking occurring up to before April 2009 (Offenses 2-25, Count 1 of the indictment), and conspiracies to commit crimes of homicide (Offense 33, Count one) and the use of firearms (Count 2) this, without prejudice to the opinion of the court dated November 12, 2014 nor Executive Resolution 363 of December 12, 2014..."

The Court clarified that it issued discipline prejudice to that issue on November 12, 2014, also partially favorable to the extradition of **DANIEL RENDÓN-HERRERA**, and the terms of Government Executive Resolution 363 of December 12, 2014.

7. The opinion issued by the Criminal Cassation Bench of the Supreme Court of Justice, and taking account of the fact of the terms of Article 501 of Law 906/2004, the Government is free to act in accordance with the national convenience, and grants the extradition of the Colombian citizen **DANIEL RENDÓN-HERRERA,** ID 8.011.256 to appear for trial before the United States authorities for Count 1 (uninterrupted and illegal enterprise); Offense one (conspiracy to produce and distribute cocaine internationally) committed between September 21, 2013 and December 2014 in that same kind; and Offenses 26-32 (drug-trafficking) contained in superseding indictment 14-0625 (S-3) (DLI) issued on August 12, 2015 in the US District Court for the Eastern District of New York; and denied the tradition of that for Offenses 2-25 of Count 1 (uninterrupted illegal enterprise, and conspiracy to produce and distribute cocaine internationally), occurred between June 2003 and September 20, 2013, and drug-trafficking from to April 2009); and Offense 33 of Count 1 (conspiracy to commit crimes of homicide), and Count 2 (use of firearms), as part of the same Count.

8. Documentation supplied to the file shows the citizen **DANIEL RENDÓN-HERRERA** had been convicted in Colombia, and following investigations are being pursued against him:

In effect, it is noted that he was convicted in a judgment of September 30, 2008 Special Criminal Court 4, Villavicencio, Meta, in case **2008-00711-00** for the crime of conspiracy to commit an offence, with 153 months imprisonment; the conviction was handed down on September 20, 2010 by Special Criminal Court 4 Villavicencio, Meta in case **2010-00023-00** for the crime of aggravated conspiracy to commit an offence, in which he was sentenced to 67 months and 15 days imprisonment, and there is the a conviction of September 24, 2010 in Special Criminal Court 4e Villavicencio, Meta in case **2010-0056**, the crime of forced disappearance of homicide against a protected person in which he was convicted sentenced to 288 months imprisonment. There is the conviction of January 5, 2011 of Special Criminal Court 1, Villavicencio, Meta, case **2010-000 7700** for the crime of homicide, kidnapping, and conspiracy to commit an offence in which he was sentenced to 17 years and 2 months imprisonment, on April 6, 2011, by Special Criminal Court 11, Bogota, in case **2011-00009-00** for the crime of homicide against a protected person, against which he was sentenced to 230 months imprisonment; a sentence issued on May

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

19, 2011 by Special Criminal Court 2, Villavicencio Meta, in case **2010-00119**, for the crime of aggravated homicide, when he was sentenced to 189 months and 22 days in prison, and; and a sentence of October 14, 2011 in Special Criminal Court 2, Villavicencio, Meta in case **2010-00008-00** for the crime of homicide against a protected person, when he was sentenced to 480 months imprisonment, a sentence under the supervision of Execution of Sentences and Precautionary Measures Court 3, Ibagúe; and a conviction of November 5, 2013 by Special Criminal Court 2, Antioquia (Trials), in case **2013-00228**, for counts of conspiracy to commit an offence, five aggravated homicides, and manufactured trafficking and carriage of weapons and ammunition restricted for the use of the Armed Forces, in which he was sentenced to 33 years imprisonment.

Execution of Sentences and Precautionary Measures (Decongestion) Court 3, Ibagué Tolima, in a pronouncement of March 27, 2015[4] (four), ordered the accumulation of sentences imposed in the judgements of April 6, 2011, May 19, 2011 and October 14, 2011, and the accumulation was set definitively at 40 years imprisonment.

It can be seen that the documentation supplied to the files shows that Mr **RENDÓN-HERRERA** is investigated in a number of cases in the context of law 600/2000, in which he was heard in in in preliminary enquiries in order to clarify crimes committed during his militancy, when he acted as the administrative and financial commanding officer of the Centaurus bloc of the paramilitary AUC, and that he is being Investigated under Law 906/2004 for the formation of illegal armed groups.

It is also to be seen that the Justice and Peace Bench of the Superior Tribunal of the judicial district of Bogota in a pronouncement of September 9, 2013 in case 2007 83019, decided:

> *ONE. To exclude **DANIEL RENDÓN-HERRERA**, ID 8,011,256 (municipality of Amalfi-Antioquia) from the Special Jurisdiction of Justice and Peace*
>
> *TWO. This decision on exclusion of implied loss of rights of the victims, and therefore, the goods delivered on the occasion of the militancy of **DANIEL RENDÓN-HERRERA** in the bloc Centaurus, listed to this court, continue under the administration of the Victims Reparation Fund..."*

The Court said in that pronouncement:

> *"5.2.26. The conclusion of the foregoing is that the relative personal requirement, amongst others, not to commit crimes after demobilization, required by the Law of Justice and Peace to remain in this jurisdiction, was defrauded by the candidate **DANIEL RENDÓN-HERRERA**. In consequence, it is in order for this Court to declare his exclusion from the transitional system, so that he will be left at the disposal of the ordinary courts, before whom he should respond for crimes confessed and not confessed.*

---

[4] Folios 156-159 Supreme Court files

9

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

*(...)*

> *5.2.31. In the case of **DANIEL RENDÓN-HERRERA**, another event which impedes his permanence in this jurisdiction, and in is in relation to the statement that he himself made before the Criminal Cassation Bench of the Supreme Court of Justice, that after demobilizing, he re-armed himself in order to form other unlawful groups operating in the area of Urabá...... "*

With regard to this point, at the time of delivery of the person claimed, it is important to note that the Criminal Cassation Bench of the Supreme Court of Justice in an opinion issued in this case indicated that it did not accede to the defense argument that, by virtue of international humanitarian law, and the prerogatives related to victims, the opinion should be unfavorable to the extradition of Mr RENDÓN-HERRERA, but, just as it had said in its opinion of November 12, 2014 (CP 188-14, case 42711), it made it a condition that the Government would also authorise delivery of the citizen after he had made his statements at that time pending process, "in order precisely to protect the rights of the victims in that way".

It is important to note that with regard to the Government at that time, in the face of the request for the extradition formalized by the United States Government for this citizen, in Diplomatic Note njO. 2396 of November 13, 2013, attending to the opinion of the Supreme Court of Justice of November 12, 2014, in Executive Resolution No. 363 December 12, 2014, it granted the extradition of the citizen for Counts 1 and 2 and denied it for Count 3, in as they appeared in superseding indictment S6 04 CR. 962 (LAP), of October 1, 2013 in the US District Court for the Southern District of New York; and it deferred delivery until the person required had made statements pending process, in order in this way to protect the rights of the victims, noting that the term granted for this execution of delivery does not confer any rights on the person extradited, but that it was granted in order to facilitate collaboration with justice so that the citizen required could be heard in his own versions, under interrogation and inquiry, and which were pending process. And to that extent, the Ministry of Justice and Law regularly - every three months - would request information from the Attorney General on collaboration with the citizen required was providing, and the proceedings which were still pending.

After several regular reports, the Prosecutor delegated to organized crime, in communication 2017 777001637373 of November 2, 2017 sent the International Affairs Directorate of the Prosecution Service its final report for activities undertaken by the Articulation Group for support of the investigations related to the Colombian citizens **DANIEL RENDÓN-HERRERA** a.k.a. "Don Mario", filed in the Ministry of Justice and Law on November 8, 2017.

In that communication, the Delegate against Organized Crime reported that "*according to the timetable of activities proposed by this Office (formerly, the Articulation of Specialized National Prosecution Offices Directorate**), the proceedings pending (in enquiries, interrogations, sworn statements and plea-bargaining) were conducted as far as possible, taking account of the magnitude and complexity of the criminal***

10

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

*phenomena associated with Mr RENDÓN-HERRERA, and the wide variety of spaces and times of the occurrence of the events..."*

The Delegate said that in order to comply with these proceedings, they applied criteria of priorities and situations, and cases with observance and recognition of rights attached to direct and indirect victims of criminal conduct recognized and accepted by Mr DANIEL RENDÓN-HERRERA.

Finally, the Delegate said that *"the investigations initiated on the basis of the collaboration offered by the person wanted in extradition continue to be developed in the special offices against organized crime, against drug trafficking, transitional justice, extinction or ownership rights and against asset laundering, in order to guarantee the interests of the administration of justice and to protect the rights of victims.*

*Therefore, it is now the business of the Government to decide on the delivery of the Colombian citizens DANIEL RENDÓN-HERRERA to foreign authorities who have requested his extradition..."*

And in the same sense, the International Affairs Division said in its remittal letter for that communication[5]:

*"In the mentioned document, it is informed that the items printed in this proceeding were evacuated as far as possible, in accordance with a timetable established, and for this reason, **this office awaits the pronouncement of the Government with regard to the delivery and extradition of delivery of this citizen in extradition** to the United States of America, which was deferred in Executive Resolution 363 of December 12, 2014...".*

The final report says the following:

*"... The Prosecution Service ordered the reactivation of the investigation suspended under Law 975/2005 (Law of Justice and Peace), once the courts had ordered the exclusion from the proceedings for transitional Justice of a.k.a. "Don Mario".*

*The victims have had the opportunity to participate in the scenarios ordered for it, in guarantee of access to the administration of justice, truth and non-repetition, being the fundamental principles of ordinary and transition law in Colombia.*

*Additionally, RENDÓN-HERERRA has accepted responsibility for a number of criminal acts in which he took part, for which he has made important contributions to the causes and motives that generated the victimisation of hundreds of individuals.*

*Investigations and judgements pursued in Colombia will continue the legal process, and therefore the rights of victims will not be adversely affected by the*

---

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

*extradition of DANIEL RENDÓN-HERRERA* ".

While the Criminal Cassation Bench of the Supreme Court of Justice, as it did in its opinion of November 12, 2014 (CP188-14, case 4711), made it a condition in its opinion that the Government should authorize the delivery of the citizen after he had made his statements pending process, it should be noted that the contents of the final report provided by the Delegate against Organized Crime of the Prosecution Service, in which he expressly indicates that the proceedings pending (enquiries, interrogations, sworn statements and plea-bargaining**) "were conducted as far as possible, taking account of the magnitude and complexity of the phenomenon associated with Mr RENDÓN-HERRERA, and the wide variety of times and spaces in which they occurred."...)**

On this understanding, with the configuration in this case of the hypothesis of Article 504 of Law 906/2004, which gives the Governments discretionary powers to defer the delivery of the citizen required or not to do so, the Government, taking account of the foregoing, and attending to the discretionary powers it has rule mentioned to decide on the timing of delivery of the person claimed, and the contents of the final report[6], sent by the Delegate against Organized Crime, in Communication 2017 7770017373 of November 2, 2017 to the International Affairs Department of the Prosecution Service, and subsequently provided to the Ministry of Justice and Law, does not consider it convenient if this case to defer delivery of the Colombian citizens **DANIEL RENDÓN-HERRERA**, and on the contrary will order that it be effected subject to certain conditions to be established in this administrative act, noting to the State requiring that should there be any subsequent conviction for the acts on which extradition is granted, or when for any other reason for his detention ceases, the citizen required should be returned to this country to serve the sentences imposed on him.

**9.** The Government, attending to Section 494.1 of Law 906/2004, will require the Government of the United States not to try the person required for an action prior to or other than that which motivates this request for extradition. Further, it is noted that facts or evidential material prior to December 17, 1997 may not be included.

**10.** The Government will order the delivery of the citizen **DANIEL RENDÓN-HERRERA** against the commitment by the State Requiring that it will comply with the conditions of Section 494.2 of Law 906/2004,  that is, that he will not be subjected to forced disappearance, torture or cruel, inhuman or degrading treatment or punishment or exile, life imprisonment or confiscation. The proviso against the death penalty is not required here since the offense which is the motive of this extradition request does not attract that penalty.

**11**. The required citizen is entitled to be have the time he remained detained by reason of these extradition proceedings taken into account by the State requiring, and to accredit this situation he may request that the Prosecution Service certify this, since it is the competent authority to do so.

---

[6] Articulation Group report supporting the investigations of Daniel Rendón-Herrera

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

Notwithstanding the foregoing, we note that, as has been the custom, the International Affairs Department of the Prosecution Service will send a certificate of the time spent in detention by reason of the extradition proceedings to the Ministry of Foreign Affairs Migration and Consular Affairs and Citizen Service Department for the Consul to be aware of the situation.

Finally, the Government, through the Ministry of Justice and Law will send a copy of this decision to the Ministry of Foreign Affairs Migration and Consular Affairs and Citizen Service Department for the purposes of Presidential Directive 7/2005 and the Supreme Court of Justice in its opinion.

Therefore it is,

## RESOLVED:

**ARTICLE 1. To grant** the extradition of the Colombian citizen **DANIEL RENDÓN-HERRERA** ID 8.011.256 , to appear for trial before the United States authorities for Count 1 (uninterrupted criminal enterprise), **Offense 1** (Conspiracy to produce and distribute cocaine internationally) committed between September 21, 2013 and December 2014; and **offenses 26-32** (drug-trafficking) in Superseding Indictment 14-0625 (S-3)(DLI) of August 12, 2015 in the US District Court for the Eastern District of New York.

**ARTICLE 2. To deny the extradition of DANIEL RENDÓN-HERRERA** to be tried for **Offenses 2-25 Count** 1 (uninterrupted criminal enterprise and conspiracy to produce and distribute cocaine internationally between June 2003 and September 20, 2013 and drug-trafficking up to April 2009; **Offense 33 Count** 1 (conspiracy to commit crimes of homicide), and Count 2 (use of firearms) in Superseding Indictment 14.0625(S.3)(DLI) of August 12, 2015 in the US District Court for the Eastern District of New York

**ARTICLE 3. Not to defer** the delivery of this citizen as explained in the Motivation above, advising the State requiring that when he has served any sentence passed on him for the offenses for which extradition is authorized or when the reason for his detention there has ceased for any reason, he must return to this country to serve the sentences passed on him here.

**ARTICLE 4.** To order the delivery of the citizen **DANIEL RENDÓN-HERRERA** with the commitment on the part of the State Requiring, of compliance with conditions referred to in Section 494.2 of Law 906/2004, that is, that he will not be subjected to forced disappearance, torture or cruel, inhuman or degrading treatment or punishment or exile, life imprisonment or confiscation.

**ARTICLE 5.** The State Requiring will be advised that the citizen extradited may not be tried or convicted for any prior act other than that which was the reason for this request, in accordance with the terms of Section 494.1 of Law 906/2004.Also, acts or evidential material prior to December 17, 1997 may not be included.

ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia

13

**ARTICLE 6.** This decision is to be served personally on the interested party or his attorney, or the person duly authorized by the interested party to receive service; and he is to be informed that there is recourse for revocation against it, and recourse must be entered within ten days following service of this notice as permitted by Article 76 of the Administrative Procedures and Disputes Code.

**ARTICLE 7.** A certified copy of this resolution, subject to enforceability, will be sent to the International Legal Affairs Office and the Office of Migration and Consular Affairs and Citizens Service at the Foreign Ministry, the Delegate against Organized Crime of the Prosecution Service, Special Criminal Court 2, Antioquia (Trials), Special Criminal Courts 1 and 4, Villavicencio, Meta, Execution of Sentences and Precautionary Measures 3 (Decongestion) Ibagué, Tolima  and to the Attorney General, for them to act accordingly.

**ARTICLE 8.** This resolution takes effect from the date on which it becomes effective.

**BE** THIS PUBLISHED, in *Diario Oficial*, **served**  on the required citizen or his counsel, or on the person duly authorized by the interested part to receive service, **communicated**  to the Ministry of Foreign Affairs and  to the Attorney General´s Office and **obeyed.**

Given in Bogotá on December 14, 2017

Minister of Justice and Law,
**ENRIQUE  GIL-BOTERO**

Legalization:
Apostille **ASEZ 117254671** of of 4/25/2018confirms that this document was signed by ALVARO DE FÁTIMA GÓMEZ-TRUJILLO as Secretary General of the Ministry of Justice and Law.

14


ANTHONY LETTS
Traductor Juramentado
Res. 139/80 Minjusticia



Bogotá D.C., Viernes, 6 de abril de 2018

Embajadora
**LUZ STELLA JARA PORTILLA**
Directora de Asuntos Migratorios, Consulares y
Servicio al Ciudadano
Ministerio de Relaciones Exteriores
Carrera 5 No. 9-03
Bogotá

Asunto: Trámite de extradición pasiva de **Daniel Rendón Herrera**.

Apreciada señora Embajadora:

Como es de su conocimiento, según se informó a través de nuestro oficio OFI15-0000903-OAI-1100 del 21 de enero de 2015, el Gobierno Nacional mediante Resolución Ejecutiva No. 363 del 12 de diciembre de 2014, concedió parcialmente la extradición del ciudadano Daniel Rendón Herrera, requerido en la Corte Distrital de los Estados Unidos para el **Distrito Sur de Nueva York**.

En esta oportunidad, para su conocimiento y fines pertinentes le remito copia auténtica de la Resolución Ejecutiva N° 425 del 20 de diciembre de 2017, por medio de la cual el Gobierno Nacional resolvió ordenar la entrega del mencionado ciudadano.

Cordialmente,

**DANIEL ANDRÉS CRUZ CÁRDENAS**
Director de Asuntos Internacionales

*Anexo lo anunciado en 5 folios.*
*Elaboró: Sección de extradiciones (CBP-NIE18- 980)*